1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                         CENTRAL DISTRICT OF CALIFORNIA
10
11
12   SHAUN DARNELL GARLAND,        )   Case No. CV 13-6574-FMO (KK)
                                   )
13                Plaintiff,       )
                                   )
14         v.                      )   FINAL REPORT AND
                                   )   RECOMMENDATION OF UNITED
15   CHARLIE HUGHES,               )   STATES MAGISTRATE JUDGE
                                   )
16                Defendant.       )
                                   )
17   _____  )
18
19         This Final Report and Recommendation is submitted to the Honorable Fernando
20   M. Olguin, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order
21   05-07 of the United States District Court for the Central District of California.
22
23                                       I.
24                   **SUMMARY OF RECOMMENDATION**
25         Plaintiff Shaun Darnell Garland ("Plaintiff"), a state prisoner proceeding *pro se*,
26   has filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983, against sole
27   defendant Charlie Hughes ("Defendant"), a Correctional Lieutenant at California State
28   Prison, Los Angeles County ("CSP-LAC").  The FAC arises out of allegations Defendant

                                         1

placed Plaintiff in administrative segregation in August 2011, January 2012, and March 2012, in retaliation for Plaintiff's prior administrative grievances and lawsuits against California Correctional Peace Officers Association ("CCPOA") members and California Department of Corrections and Rehabilitation ("CDCR") employees.

Defendant has filed a Motion for Summary Judgment, contending he is entitled to judgment as a matter of law because the FAC's claims are either unexhausted or meritless. For the reasons set forth below, the Court recommends Defendant's Motion for Summary Judgment be **GRANTED** in its entirety and this action be dismissed.

## II.

## PROCEDURAL BACKGROUND

On December 10, 2013, Plaintiff filed a *pro se* Complaint against Defendant, in his individual capacity. (ECF Docket No. ("dkt.") 6). On May 15, 2014, Defendant filed an Answer to the Complaint. (Dkt. 17).

On July 25, 2014, after procuring the Court's leave to file an amended complaint, Plaintiff filed the instant FAC against Defendant. (Dkt. 31). The FAC asserted (1) a First Amendment retaliation claim and (2) an Eighth Amendment claim of cruel and unusual punishment, pursuant to 42 U.S.C. § 1983. FAC at 10-12. The FAC arose from allegations Defendant wrongfully placed Plaintiff in administrative segregation on three separate occasions in August 2011, January 2012, and March 2012. Id. The FAC requests a variety of relief, including injunctive relief, and compensatory and punitive damages. Id. at 13. On August 7, 2014, Defendant filed an Answer to the FAC. (Dkt. 32).

On April 7, 2015, Defendant filed a Motion for Summary Judgment, contending he is entitled to judgment as a matter of law because the FAC's claims are either unexhausted or meritless. (Dkt. 49). Defendant concurrently filed: (1) a Memorandum of Points and Authorities ("Def.'s Mem."); (2) a Statement of Uncontroverted Facts and Conclusions of Law ("Def.'s SUF"); (3) a Declaration of M. Fordham ("Fordham Decl.")

and supporting exhibits; (4) a Declaration of Charlie Hughes ("Def.'s Decl.") and supporting exhibits; and (5) a Declaration of Janine K. Jeffrey ("Jeffrey Decl.") and supporting exhibits.[1]  (Dkt. 49-1, 49-2, 49-3, 49-4, 49-5).

On June 15, 2015, Plaintiff filed an Opposition to the Motion, including: (1) a Memorandum of Points and Authorities signed under penalty of perjury ("Pl.'s Mem."); (2) a declaration signed by Plaintiff regarding the Fordham Declaration presented by Defendant ("Pl.'s Decl. regarding Fordham Decl.") and supporting exhibits; (3) a declaration signed by Plaintiff regarding Defendant's Declaration presented by Defendant ("Pl.'s Decl. regarding Def.'s Decl.") and supporting exhibits; (4) a "Statement of Controverted Factual Issues" ("Pl.'s SUF"); (5) a declaration signed by Plaintiff regarding the Jeffrey Declaration presented by Defendant ("Pl.'s Decl. regarding Jeffrey Decl.") and supporting exhibits; and (6) a declaration signed by Plaintiff regarding his allegations of retaliation ("Pl.'s Decl. regarding Retaliation") and supporting exhibits. (Dkt. 64, 64-1, 64-2, 64-3, 64-4).

On July 2, 2015, Defendant filed a Reply to Plaintiff's Opposition.  (Dkt. 65). Defendant concurrently filed: (1) a "Reply Statement of Uncontroverted Facts and Conclusions of Law" ("Def.'s Reply SUF"), presenting Plaintiff's contentions in regard to Defendant's original Statement of Uncontroverted Facts and Conclusions of Law; (2) Objections to the Plaintiff's Declaration regarding Retaliation; (3) Objections to Plaintiff's Declaration regarding Jeffrey Declaration; (4) Objections to Plaintiff's Declaration regarding Fordham Declaration; and (5) Objections to Plaintiff's Declaration

---

[1]    At the time Defendant filed his Motion on April 7, 2015, Defendant did not provide a notice to Plaintiff regarding the requirements for opposing a motion for summary judgment, pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (*en banc*).  However, the Court notified Plaintiff of these requirements in a separate order on April 7, 2015.  (Dkt. 50).

1   regarding Defendant's Declaration.[2]  (Dkt. 65-1, 65-2, 65-3, 65-4, 65-5).

2          On August 5, 2015, the Court issued a Report and Recommendation.  (Dkt. 70).

3   On September 1, 2015, Plaintiff filed Objections to the original Report.  (Dkt. 72).  On

4   September 9, 2015, Defendant filed a Response to Plaintiff's objections.  (Dkt. 73).  The

5   Court herein issues a Final Report and Recommendation, addressing Plaintiff's

6   Objections in Section V.C.1.d and footnote 17.

7

8                                      **III.**

9                    **RELEVANT FACTUAL BACKGROUND**

10  **A.    Plaintiff's First Amended Complaint**

11         **1.     Factual Allegations**

12         At the time of the events in question, Plaintiff was a prisoner at CSP-LAC in

13  Lancaster, California.  FAC at 2.[3]  Plaintiff alleges Defendant is a CDCR employee and

14  CCPOA union official.  Id. at 4.

15              **a.     Plaintiff's Placement Into Administrative Segregation on August**

16                      **27, 2011**

17         On August 27, 2011, while Defendant was on second watch at CSP-LAC,

18  Defendant told Plaintiff prison staff had found an "anonymous kite" (*i.e.* a note) with

19  Plaintiff's name on it.[4]  Id. at 7.  Defendant claimed the kite showed Plaintiff was

20  involved in gang activity and was planning to kill a "S[ergeant] Williams."  Id.  Plaintiff

21  denied being involved in gang activity or in any plot to kill Williams.  Id.  At the time,

22  _____

23     [2]    Because the Court concludes Defendant is entitled to judgment as a matter of law

24  even after considering Plaintiff's various declarations, the Court **OVERRULES**
    Defendant's objections to Plaintiff's declarations as moot.

25

26     [3]    The Court refers to the FAC as if it is consecutively paginated.

27     [4]    Plaintiff attaches a purported copy of the kite to the FAC.  FAC at 16.  The copy
    appears to warn that inmate Zulu Jenson had been making threats against CSP-LAC
28  Sergeant Williams' life.  Id.  The copy makes no reference to Plaintiff.  Id.

                                         4

Defendant was holding the kite in his hand.  Id.  Purporting to read from the kite, Defendant told Plaintiff the kite stated Plaintiff was involved in gang activity and that Plaintiff was involved in a plot to kill Williams.  Id.  Defendant refused to show Plaintiff the kite.  Id.  On the basis of the kite, Defendant placed Plaintiff in administrative segregation.  Id.

Plaintiff alleges Defendant misrepresented facts regarding the kite and placed Plaintiff in administrative segregation on August 27, 2011 in retaliation for Plaintiff's constant filing of prison grievances and civil rights lawsuits against CDCR employees and CCPOA members.  Id.

**b.** **Plaintiff's Placement Into Administrative Segregation on January 26, 2012**

On January 25, 2012, Plaintiff was assaulted by CSP-LAC Correctional Officer Hoffman during a pat-down search.  Id. at 8.  On January 26, 2012, while Defendant was on second watch at CSP-LAC, Plaintiff reported the incident regarding Hoffman to Defendant.  Id.  When Plaintiff complained of the incident to Defendant, Defendant asked if Plaintiff intended to file a staff complaint against Hoffman.  Id.  Plaintiff replied that he did wish to file a staff complaint.  Id.  Defendant then stated, "Then I've got to lock you up."  Id.  Defendant subsequently placed Plaintiff in administrative segregation.  Id.

Plaintiff claims he was administratively segregated by Defendant on January 26, 2012 because he complained about the incident with Hoffman and sought to pursue a complaint against Hoffman.  Id.  Plaintiff subsequently filed a prison grievance against Defendant regarding his administrative segregation.  Id.

**c.** **Plaintiff's Placement Into Administrative Segregation on March 3, 2012**

Approximately three days prior to March 3, 2012, Plaintiff was asked (by an unknown prison official) whether he would consider dropping the staff complaint he filed against Defendant regarding his administrative segregation on January 26, 2012.  Id. at 9.

5

Plaintiff replied he would not do so.  Id.  As a result, Plaintiff claims he was again placed into administrative segregation on March 3, 2012.  Id.

On March 3, 2012, during the third watch at CSP-LAC, Plaintiff was escorted from his cell by two prison officials to the A-Facility Program Office.  Id.  In the office, Plaintiff observed Defendant and Correctional Officer Hoffman sitting together.  Id.  Plaintiff did not exchange words with either Defendant or Hoffman.  Id.  Plaintiff was prepared for and then placed into administrative segregation by Defendant.  Id.

On March 9, 2012, Plaintiff was released from administrative segregation pursuant to an "investigation" by Defendant.  Id.  Prior to his segregation, Plaintiff had been enrolled in the "Progressive Programming Facility" ("PPF") Program at the A-Facility in CSP-LAC.  Id.  After Plaintiff's release from segregation, he was placed in the B-Facility, preventing his return to the PPF Program.  Id.  Plaintiff was subsequently expelled from the PPF Program, despite never having violated the agreement he signed to enroll in the PPF Program.  Id.  Plaintiff claims Defendant's retaliatory placement of Plaintiff into administrative segregation ultimately caused his expulsion from the PPF Program.  Id.

## 2.   **Causes of Action**[5]

In the FAC, Plaintiff asserts six causes of action: Plaintiff claims his administrative segregation on August 27, 2011, January 26, 2012, and March 3, 2012 violated both his (1) First Amendment right against retaliation for participation in protected activity; and

---

[5]   In his Opposition to Defendant's Motion for Summary Judgment, Plaintiff states Defendant engaged in a "conspiracy" to violate Plaintiff's constitutional rights.  Pl.'s Mem. at 10.  However, this conspiracy claim is not properly before the Court: it was not alleged in the FAC and cannot be asserted for the first time in a motion for summary judgment.  See Navajo Nation v. United States Forest, Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) (en banc); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000).

1  (2) Eighth Amendment right to be free of cruel and unusual punishment.[6] Id. at 10-12.

2  The Court refers to Plaintiff's First Amendment and Eighth Amendment claims in regard

3  to the August 27, 2011 incident as Claims One and Two, respectively.  The Court refers

4  to Plaintiff's First Amendment and Eighth Amendment claims in regard to the January

5  26, 2012 incident as Claims Three and Four, respectively.  The Court refers to Plaintiff's

6  First Amendment and Eighth Amendment claims in regard to the March 3, 2012 incident

7  as Claims Five and Six, respectively.

8     In his instant Motion for Summary Judgment, Defendant contends Claims One,

9  Two, Three, Four, Five, and Six are all meritless and that Plaintiff failed to exhaust his

10  administrative remedies in regard to Claims Five and Six.  Def.'s Mem. at 6-18.

11

12                                **IV.**

13                          **LEGAL STANDARD**

14     Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

15  Procedure if the moving party demonstrates the absence of a genuine issue of material

16  fact and entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S.

17  317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A factual dispute is "material" if it

18  might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby,

19  Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

20     An affidavit or declaration may be used to support or oppose a motion for

21  summary judgment, provided it is "made on personal knowledge, set[s] out facts that

22  would be admissible in evidence, and show[s] that the affiant or declarant is competent to

23  testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  When ruling on a summary

24  _____

25     [6]   Plaintiff also repeatedly notes in the FAC he was subject to "false imprisonment"
based on his repeated placement in administrative segregation.  FAC at 10-12.  As
26  discussed further in Section V.D., to the extent Plaintiff attempts to assert a false
imprisonment claim under state law, the Court **DISMISSES** it without prejudice for lack
27  of jurisdiction.

28

                                   7

judgment motion, the district court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts."  Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).  Furthermore, the Court must not make credibility determinations with respect to the evidence offered.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita, 475 U.S. at 587).

Moreover, pursuant to Central District Local Rule 56-3, the Court assumes the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy.[7]

## V.

## DISCUSSION

**A.** **Defendant is Entitled to Judgment as a Matter of Law in Regard to Claims Five and Six for Plaintiff's Failure to Exhaust Administrative Remedies.**

Because Defendant challenges whether Plaintiff exhausted his administrative remedies in regard to Claims Five and Six, the Court addresses these claims first.  In the instant Motion, Defendant argues Plaintiff failed to exhaust his administrative remedies in regard to Claims Five and Six because he did not exhaust any inmate grievances

_____

[7]   Central District Local Rule 56-3 provides:

> In determining any motion for summary judgment, the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Issues" and (b) controverted by declaration or other written evidence filed in opposition to the motion.

8

relating to his March 3, 2012 placement in administrative segregation.  Def.'s Mem. at 6-9.  Plaintiff claims Defendant is not entitled to summary judgment on the exhaustion issue because his grievance relating to the March 3, 2012 incident was improperly screened.  Pl.'s Mem. at 10-14.  The Court considers the parties' contentions in regard to Claims Five and Six below.

### 1.       Law Governing PLRA Exhaustion

#### a.       The PLRA Exhaustion Requirement

As part of the Prison Litigation Reform Act of 1996 ("PLRA"), Congress amended and strengthened the requirement that prisoners pursuing claims under 42 U.S.C. § 1983 and other federal statutes, must first exhaust administrative remedies.  As amended, 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The U.S. Supreme Court has held the PLRA requires a prisoner to complete any prison administrative process capable of addressing the inmate's complaint, even if the prisoner seeks money damages and such relief is not available under the administrative process.  See Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).  Moreover, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002); see also Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Furthermore, "§ 1997e(a) requires exhaustion before the filing of a complaint" and is not satisfied by exhaustion during the course of the litigation.  McKinney v. Carey, 311

F.3d 1198, 1199 (9th Cir. 2002); see also Woodford v. Ngo, 548 U.S. 81, 93-94, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).  "[P]roper exhaustion" under the PLRA requires that a prisoner comply with the prison's "deadlines and other critical procedural rules" as a precondition to bringing suit in federal court.  See Ngo, 548 US. at 88, 90.  If a prisoner has not exhausted his available administrative remedies before filing his federal suit, the Court must dismiss the action without prejudice to allow plaintiff to file a new action after he has completed his administrative remedies.  See McKinney, 311 F.3d at 1200-01.

### b.   The Parties' Respective Burdens

Section 1997e(a) creates an affirmative defense and, therefore, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216.  A defendant has the burden of raising and proving plaintiff's failure to exhaust.  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (setting forth the respective burdens where a defendant contends a plaintiff failed to exhaust administrative remedies).  If a defendant meets this burden, the burden shifts to plaintiff to come forward with evidence showing his administrative remedies were "effectively unavailable." Id.; Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (a failure to exhaust may be excused if administrative remedies have been made "effectively unavailable").

The Ninth Circuit has held that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." Sapp, 623 F.3d at 823.  The rationale for this exception is straightforward: if prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and, as a result, his administrative remedies become unavailable. Id.  In order to fall within this exception, the inmate must establish: (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court; and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable

1    regulations. Id. at 823-24.

2         In the Ninth Circuit, a defendant may raise the issue of non-exhaustion in a motion

3    for summary judgment. Albino, 747 F.3d at 1169. For defendants to prevail on a motion

4    for summary judgment, they must produce evidence proving a plaintiff's failure to

5    exhaust. See id. at 1166. If the undisputed evidence, when viewed in the light most

6    favorable to plaintiff, establishes plaintiff failed to exhaust his administrative remedies,

7    the defendants are entitled to judgment as a matter of law. Id.; see also Fed. R. Civ. P.

8    56(a). If, however, material facts relevant to the issue of exhaustion are disputed, then

9    "summary judgment should be denied" and disputed factual questions relevant to

10   exhaustion should be decided by the Court "in a preliminary proceeding." Albino, 747

11   F.3d at 1170-71.

12              **2.    California's Inmate Grievance Process**

13        The State of California provides its prisoners and parolees the right to appeal

14   administratively "any policy, decision, action, condition, or omission by the department

15   or its staff that the inmate or parolee can demonstrate as having a material adverse effect

16   upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). At the

17   time of the events giving rise to the present action, California prisoners were required to

18   proceed through three separate levels of appeal to exhaust the administrative appeal

19   process: (1) first level appeal to the prison's appeals coordinator; (2) second level appeal

20   to the prison institution's head or designee; and (3) third level appeal to the Secretary of

21   CDCR. See id. § 3084.7. A final decision from the Secretary's level of review—that is,

22   the third level—exhausts the prisoner's administrative remedies. See id. § 3084.7(d)(3).

23        At all levels of the administrative process, prisoners must "use a CDCR Form 602

24   (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the

25   relief requested." Id. § 3084.2(a). Prisoners may also attach a "CDCR Form 602-A

26   (08/09), Inmate/Parolee Appeal Form Attachment" if "additional space is needed to

27   describe the issue under appeal or the relief requested." Id. "The inmate or parolee is

28   limited to the space provided on the Inmate/Parolee Appeal form and one Inmate/Parolee

                                            11

Appeal Form Attachment to describe the specific issue and action requested." Id. §
3084.2(a)(2).

California regulations allow for inmate grievances to be screened and rejected by
prison officials without a decision if the grievances are improperly submitted. See id. §§
3084.5, 3084.6. In particular, a grievance may be screened out if an inmate "has not
submitted his/her appeal printed legibly in ink or typed on the lines provided on the
appeal forms in no smaller than a 12-point font or failed to submit an original." Id. §
3084.6(b)(10).

### 3. **Defendant's Evidence**

In support of his Motion for Summary Judgment as to Claims Five and Six,
Defendant presents a declaration of CSP-LAC Appeals Coordinator M. Fordham.
Fordham Decl. ¶ 2. In the declaration, Fordham states he is responsible for screening,
logging, and processing grievances and administrative appeals filed by CSP-LAC
inmates. Id. After searching CSP-LAC records, Fordham claims Plaintiff filed a single
inmate grievance on March 7, 2012 relating to his March 3, 2012 placement in
administrative segregation, at the first level of review.[8] Id. ¶ 7. Fordham states the
grievance was screened out by J. Curiel, the Appeals Coordinator at the time, for two
reasons (pursuant to Section 3084.6(b)(10) of applicable regulations): (1) it was not
written legibly; and (2) Plaintiff did not submit an original copy of the grievance.[9] Id.

---

[8]    Defendant also relies on a statement by Plaintiff in a January 2015 deposition that
he did not file any prison grievances with respect to his March 3, 2012 placement in
administrative segregation. See Def.'s Mem. at 8-9; Def.'s Reply at 1-2; see also Jeffrey
Decl., Ex. A at 144. Defendant argues this statement also supports a finding that Claims
Five and Six are unexhausted. See Def.'s Mem. at 8-9; Def.'s Reply at 1-2. Given that
Fordham's declaration and supporting exhibits show Plaintiff *did* file a grievance relating
to the March 3, 2012 incident, however, the Court disregards this argument.

[9]    Fordham misstates the record. The March 16, 2012 notice of screening attached to
Fordham's declaration states the grievance was screened out because Plaintiff "ha[d] not
submitted [his] appeal printed legibly in ink or typed on the lines provided on the appeal
forms in no smaller than a 12-point font *or* failed to submit an original." Fordham Decl.,

12

Fordham claims to have found no records showing Plaintiff filed any other grievances regarding Plaintiff's placement in administrative segregation on March 3, 2012 at any of the other levels of review.  Id.

Defendant has also attached two exhibits to Fordham's declaration: (1) Plaintiff's March 7, 2012 grievance at the first level of review, consisting of a 602 form, a 602-A form, and a "Rights and Responsibility Statement" ("Exhibit A"); and (2) a March 16, 2012 notice from J. Curiel to Plaintiff that the March 7, 2012 grievance had been screened out ("Exhibit B").  Fordham Decl., Ex. A, B.  According to the March 16, 2012 notice, Plaintiff's March 7, 2012 grievance was screened out at the first level because Plaintiff had "not submitted [his] appeal printed legibly in ink or typed on the lines provided on the appeal forms in no smaller than a 12-point font or failed to submit an original," in violation of Section 3084.6(b)(10) of applicable prison regulations. Fordham Decl., Ex. B; see also Cal. Code Regs. tit. 15, § 3084.6(b)(10).  The March 16, 2012 notice also informed Plaintiff he "may write only one row of text per line" of the grievance.  Fordham Decl., Ex. B.  Plaintiff does not dispute the authenticity of the March 16, 2012 notice.[10]

### 4.   **Plaintiff's Evidence**

Plaintiff does not dispute that he never received a final decision at the third level relating to the FAC's allegations regarding his March 3, 2012 placement in administrative

_____

Ex. B (emphasis added).

[10]   In his declaration regarding Fordham's declaration, Plaintiff claims defense counsel "duped him" during his deposition by showing Plaintiff various "first level screenout forms containing verbiage from appeals coordinators who were never involved in the original and actual appellate process."  Pl.'s Decl. regarding Fordham Decl. ¶ 15. Plaintiff states he was led by defense counsel to "admit[] to false evidence."  Id. However, Plaintiff has not submitted the portion of the deposition transcripts where this alleged questioning occurred.  Thus, there is no basis for concluding Plaintiff was "duped" to "admit[] to false evidence."  Moreover, it is entirely unclear as to what "false evidence" Plaintiff is referring.

1   segregation.  Plaintiff does not dispute the authenticity of the March 16, 2012 screening

2   notice attached to Fordham's declaration.  See Pl.'s Mem. at 13-14; Pl.'s SUF at 9.

3   Instead, Plaintiff presents his own declaration signed under penalty of perjury (and

4   supporting exhibits), in which he claims his March 7, 2012 grievance was improperly

5   screened because his grievance complied with Section 3084.6(b)(10).  See Pl.'s Decl.

6   regarding Fordham Decl.  Plaintiff claims the grounds for screening out his March 7,

7   2012 grievance were false because his grievance was legible and an original and hence,

8   not in violation of Section 3084.6(b)(10).  Id. ¶ 19.  Thus, Plaintiff argues his

9   administrative remedies were "effectively unavailable," relying on the Ninth Circuit's

10  holding in Sapp v. Kimbrell, 623 F.3d 813 (9th Cir. 2010).  Id.[11]

11      **5.   <u>Analysis</u>**

12          Viewing the undisputed facts in the light most favorable to Plaintiff, the Court

13  concludes Defendant is entitled to judgment as a matter of law as to Claims Five and Six

14  because Plaintiff failed to exhaust his administrative remedies.  Albino, 747 F.3d at

15

16      [11]   Plaintiff also claims his March 7, 2012 grievance constituted a "staff complaint,"
    for purposes of California prison regulations.  Pl.'s Decl. regarding Fordham Decl. ¶ 12.

17  Plaintiff claims Appeals Coordinator J. Curiel improperly screened out the grievance and
    did not comply with procedures for processing staff complaints under California

18  regulations.  Id.  Although unclear, Plaintiff appears to allege Curiel screened out the
    grievance with an unofficial response (attached to Plaintiff's declaration as "Exhibit C")

19  stating the grievance had been referred to the prison's "hiring authority" and that the
    appeal did not meet the requirements for assignment as a "staff complaint."  Id. ¶ 13; Ex.

20  C.  The unofficial response states it is "for staff purposes only" and "not to be seen by the
    inmate."  Id., Ex. C.  Plaintiff alleges the unofficial response was not an official or public

21  CDCR document.  Id. ¶ 14.  Rather, Plaintiff claims the unofficial response was an "in-

22  house Appeals Coordinator office instruction" that directed Curiel to screen out his staff
    complaint without referring it to the hiring authority as per California regulations.  Id. ¶¶

23  13, 14; see also Cal. Code Regs. tit. 15, §§ 3084.5(b)(4), 3084.9(i)(1) (requiring appeals
    alleging staff misconduct to be referred to the hiring authority).  The Court rejects

24  Plaintiff's claims as immaterial to the question of whether Curiel's reasons for screening

25  out the grievance on March 16, 2012 were improper under applicable California

26  regulations.  See Sapp, 623 F.3d at 824.

27

28

1170-71.  Defendant has met his initial burden of showing that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy" because Fordham's declaration establishes Plaintiff did not file a grievance relating to his March 3, 2012 placement in administrative segregation at the third and final level of California's prisoner grievance process.  See id. at 1172; Fordham Decl. ¶ 7.  Moreover, Plaintiff has not disputed that he failed to file such a grievance at the third level.

Plaintiff has not met his burden under Sapp of coming forward with evidence showing his administrative remedies were "effectively unavailable."  Albino, 747 F.3d at 1172; Sapp, 623 F.3d at 824.  Plaintiff claims he filed a first level grievance on March 7, 2012 regarding the March 3, 2012 incident, and that the grievance was improperly screened out by Appeals Coordinator J. Curiel.  Pl.'s Decl. regarding Fordham Decl. ¶ 19.  However, Curiel's reasons for screening out Plaintiff's grievance were not "inconsistent with or unsupported by applicable regulations."  Sapp, 623 F.3d at 824.  According to Curiel's March 16, 2012 notice of screening, Plaintiff's grievance ran afoul of Cal. Code Regs. tit. 15, § 3084.6(b)(10) because it was *either* illegible or an unoriginal copy.  See Fordham Decl., Ex. B.  While the notice of screening did not specify which of the two possibilities it relied on, the grievance contains small handwritten text that is often difficult to decipher and is, thus, often illegible.  Id., Ex. A.  The grievance was, thus, properly screened out pursuant to Section 3084.6(b)(10).

Consequently, the undisputed material facts, even when viewed in the light most favorable to Plaintiff, establish Plaintiff failed to exhaust his administrative remedies.  Defendant is therefore entitled to judgment as a matter of law as to Claims Five and Six.  Albino, 747 F.3d at 1166; see also Fed. R. Civ. P. 56(a).  Accordingly, Defendant's Motion for Summary Adjudication of Claims Five and Six is **GRANTED** and Claims Five and Six are **DISMISSED** without prejudice.  See McKinney, 311 F.3d at 1200-01.

///

///

///

**B.      Defendant is Entitled to Judgment as a Matter of Law in Regard to Claims One and Two.**

      **1.      Defendant is Entitled to Judgment as a Matter of Law in Regard to Claim One.**

In Claim One, Plaintiff alleges Defendant placed Plaintiff in administrative segregation on August 27, 2011 in retaliation for filing inmate grievances and lawsuits against CDCR employees and CCPOA members, in violation of Plaintiff's First Amendment rights.  FAC at 10.  Defendant argues Claim One is meritless for two reasons: (1) Plaintiff cannot establish his placement in administrative segregation was ordered in retaliation for engaging in protected activity; and (2) Plaintiff cannot show his placement did not advance a legitimate penological interest.  Def.'s Mem. at 11.

        **a.      Defendant's Arguments and Evidence in Support of Summary Adjudication of Claim One**

In support of his Motion for Summary Adjudication of Claim One, Defendant submits the following evidence.

          **i.      Defendant's Declaration**

Defendant presents his own declaration, signed under penalty of perjury.  In the declaration, Defendant states he is the Statewide Supervisory Vice President of the CCPOA.  Def.'s Decl. ¶ 1.  Defendant avers that on August 27, 2011, CSP-LAC prison officials received an anonymous note.  Id. ¶ 2.  According to the note, inmate Zulu Jenson ("Jenson") was telling other CSP-LAC inmates that they should assault Correctional Officers and inmate snitches.  Id.  The note further stated Jenson was planning to kill Correctional Officer Sergeant L. Williams if she disrespected Jenson one more time.  Id.  In support of these claims, Defendant has attached a copy of the note to his declaration ("Exhibit B").[12]  See id., Ex. B.  The note also warned that Jenson was a member of the Black Guerilla Family ("BGF") prison gang.  Id., Ex. B.

---

    [12]   The copy of the note is identical to the copy of the "kite" attached to Plaintiff's FAC.  See FAC at 16.

1    Defendant states that based on the note, Jenson and Plaintiff, as his cellmate, were

2    identified and their property was searched.  Id. ¶ 3.  A review of the inmates' central files

3    showed "their potential involvement with BGF."  Id.  Defendant claims he subsequently

4    ordered both Jenson and Plaintiff administratively segregated, for two reasons: (1) there

5    was a risk they would harm correctional staff and (2) to allow prison officials to

6    investigate the alleged plan to assault Sergeant Williams.  Id. ¶ 4.  Defendant has attached

7    a copy of the "CDC 114-D Administrative Segregation Unit Placement Notice" he signed

8    on August 27, 2011 when confining Plaintiff to administrative segregation ("Exhibit C").

9    See id., Ex. C.

10   Defendant states that at the time he ordered Plaintiff's administrative segregation

11   on August 27, 2011, he did not know Plaintiff had filed any lawsuits.  Id. ¶ 4.  Defendant

12   claims he ordered Plaintiff's administrative segregation not in retaliation for any prison

13   grievances or lawsuits filed by Plaintiff, but rather because of his "belief that [Plaintiff]

14   represented a threat to the security of the institution."  Id.

15                    ii.    **Plaintiff's Deposition Testimony**

16   Defendant also presents transcripts of Plaintiff's testimony at his January 12, 2015

17   deposition.[13]  See Jeffrey Decl., Ex. A.  At his deposition, Plaintiff testified as follows.

18   Shortly before and at the time of his August 27, 2011 placement in administrative

19   segregation, Plaintiff shared a cell with CSP-LAC inmate Jenson.  Id., Ex. A at 77.

20   Plaintiff admits he had never had any contact or communication with Defendant prior to

21   August 27, 2011.  Id., Ex. A at 71, 80.

22   On the morning of August 27, 2011, prison officials escorted Plaintiff and Jenson

23   from their cell and placed both in administrative segregation, based on an order signed by

24   Defendant.  Id., Ex. A at 80, 96.

25   ────────────────

26   [13]    In a declaration accompanying the transcripts of Plaintiff's deposition testimony,
     defense counsel Janine Jeffrey verifies that the transcripts accurately reflect Plaintiff's
27   testimony.  Jeffrey Decl. ¶ 2.  Plaintiff has not contested the authenticity or accuracy of
     the transcripts presented by Defendant.

28

                                              17

1    Plaintiff was subsequently brought before a committee, which determined Plaintiff
2    was not involved in any misconduct.  Id., Ex. A at 85.  Plaintiff and Jenson were released
3    from administrative segregation at the end of September 2011.  Id.

4    Plaintiff claimed Defendant signed the order placing Plaintiff in administrative
5    segregation on August 27, 2011, for two reasons.  First, Defendant was retaliating against
6    Plaintiff for his prosecution of two federal civil actions that were then pending: (1)
7    Garland v. Hedgepeth, Case No. CV 08-00635-WHA (E.D. Cal.); and (2) Garland v.
8    Borbon, Case No. CV 07-00750-DCB (E.D. Cal.) (arising out of an incident in a
9    correctional facility in Delano, California).  Id., Ex. A at 87, 91, 93-94, 117.  Plaintiff
10   claimed that at the time of his segregation, he was preparing an opposition to a motion in
11   either Garland v. Hedgepeth or Garland v. Borbon, but was prevented from completing
12   the opposition because he was unable to access his legal materials while in segregation.
13   Id., Ex. A at 92-93.  Plaintiff claims Defendant knew of these lawsuits because it was his
14   "business" to know of such matters and opines Defendant found out about them because
15   the defendant in Garland v. Borbon was a fellow CCPOA member.  Id., Ex. A at 93, 117-
16   18.

17   Second, Plaintiff testified Defendant placed Plaintiff in administrative segregation
18   in retaliation for a prison grievance he had recently filed regarding the confiscation of his
19   legal materials in July 2011.  Id., Ex. A at 96.  Plaintiff claimed that during the incident in
20   July 2011, several prison officials searched Plaintiff and Jenson's cell and confiscated all
21   of Plaintiff's legal papers.  Id., Ex. A at 95.  Plaintiff stated the confiscated legal papers
22   had not been returned to him by the time he was administratively segregated on August
23   27, 2011.  Id., Ex. A at 95-96.  Plaintiff claimed he filed a prison grievance related to the
24   incident prior to August 27, 2011, but admitted the grievance did not name or involve
25   Defendant.  Id., Ex. A at 96.  Nonetheless, Plaintiff claimed Defendant was aware of the
26   grievance because, based on his "experience and observation," "[t]his is information that
27   is shared among administrative staff and management staff and supervisory staff and rank
28   and file staff."  Id., Ex. A at 96-97.  Plaintiff admitted he could not point to any specific

1  evidence showing Defendant had knowledge of the grievance.  Id., Ex. A at 97.

2  **b.**  **Plaintiff's Evidence in Opposition to Summary Adjudication of**

3  **Claim One**

4  In his Opposition to Defendant's Motion for Summary Adjudication of Claim One,

5  Plaintiff presents the following evidence.

6  **i.**  **Plaintiff's Declaration Regarding Retaliation**

7  Plaintiff submits his own declaration, signed under penalty of perjury, with

8  supporting exhibits.  See Pl.'s Decl. regarding Retaliation.  In the declaration, Plaintiff

9  appears to claim his confinement in administrative segregation by Defendant was part of

10  a larger conspiracy by CCPOA members to retaliate against Plaintiff for filing prison

11  grievances and initiating lawsuits.  See id. ¶ 11.  In support of this claim, Plaintiff

12  attaches a separate document to the declaration titled "Initiation of Concerted CCPOA

13  Retaliation Scheme by Defendant Hug[h]es and[/]or his agents against the Plaintiff for

14  his First Amendment Exercise For Filing Prison Grievances and Pursuing Civil Rights

15  Actions in the Courts" (hereinafter referred to as "Exhibit 1" of Plaintiff's declaration).

16  See id., Ex. 1.  The document is signed by Plaintiff under penalty of perjury and alleges

17  the following facts.

18  Plaintiff alleges his mail and correspondences are closely monitored by

19  "Institutional Gang Investigators" ("IGI") at CSP-LAC because of Plaintiff's status as an

20  inactive gang member.  Id., Ex. 1 ¶¶ 1, 4.  Plaintiff claims that on July 26, 2011, IGI staff

21  searched his cell and confiscated legal documents related to two federal civil actions he

22  had filed, titled Garland v. Hedgpeth and Garland v. Borbon.  Id., Ex. 1 ¶¶ 1-2.

23  According to Plaintiff, the defendants in these cases were CDCR employees at the Kern

24  Valley State Prison Facility in Delano California.  Id., Ex. 1 ¶ 14.

25  In response to the confiscation of these documents, Plaintiff claims to have filed

26  prison grievances against IGI Special Agent Clemons on July 26, 2011.  Id., Ex. 1 ¶ 6.

27  Plaintiff alleges that at the time he was pursuing the grievance against Clemons, he was

28  placed in administrative segregation on August 27, 2011 on the basis of an anonymous

kite.  Id., Ex. 1 ¶ 8.  As a result, Plaintiff appears to claim he was unable to access his legal documents and had to seek an enlargement of time to file an opposition to a motion for summary judgment filed by the defendants in Garland v. Hedgpeth.  Id., Ex. 1 ¶ 10.  Although Plaintiff claims to have gained this extension and was able to mail an opposition in November 2011, Plaintiff states the defendants' motion for summary judgment was granted as "unopposed."  See id., Ex. 1 ¶¶ 12-13.  Plaintiff alleges prison officials at CSP-LAC intercepted the opposition and prevented it from reaching the court.  Id., Ex. 1 ¶ 13.  Plaintiff also appears to claim that as a result of his segregation and his inability to access his legal documents, his appeal in Garland v. Borbon, was dismissed.  Id., Ex. 1 ¶ 9.

Plaintiff contends his administrative segregation on August 27, 2011 was part of a larger conspiracy by CCPOA members at CSP-LAC to prevent him from: (1) prosecuting both Garland v. Hedgpeth and Garland v. Borbon; and (2) pursuing his prison grievance against Special Agent Clemons.  Id., Ex. 1 ¶¶ 15, 16.  In particular, Plaintiff claims Defendant played a key role in this conspiracy because he is the Vice President of CCPOA.  Id.

### ii.   Plaintiff's Declaration Regarding Defendant's Declaration

Plaintiff submits his own declaration, signed under penalty of perjury, in response to Defendant's declaration with supporting exhibits.[14]  See Pl.'s Decl. regarding Def.'s Decl.  In the declaration, Plaintiff reiterates his allegations that Defendant placed him in administrative segregation on August 27, 2011 based on an anonymous "kite."  Id. ¶ 10.  Plaintiff claims his segregation was part of a "set up" involving Correctional Officer R. Wayne.  Id. ¶¶ 11-12.  Plaintiff does not appear to allege Defendant was involved in this "set up."  Plaintiff also claims he has not been involved with the Black Guerilla Family

---

[14]   As part of the declaration, Plaintiff attaches pages of a transcript of his testimony at a deposition on January 12, 2015.  See Pl.'s Decl. regarding Def.'s Decl., Ex. D.  The pages of the transcript Plaintiff presents are not relevant to his claims in the FAC.

1  gang for the past twenty-seven years.[15]  Id. ¶ 13.

2      Plaintiff claims the kite was a "cover" and the real reason Defendant segregated

3  him on August 27, 2011 was to retaliate for Plaintiff's participation in protected

4  activities.  Id. ¶¶ 14-15.  Plaintiff claims his segregation was in retaliation for: (1)

5  Plaintiff's filing of an inmate grievance against an "IGI Clemons" on July 26, 2011; and

6  (2) Plaintiff's July 24, 2011 request for a production of documents from prison officials

7  in a then-pending civil action in federal court.  Id.

8      Plaintiff claims that on the day the August 27, 2011 kite was found, Sergeant

9  Williams—the prison official whom the kite warned was in danger—was not working at

10  the second watch at the A-Facility at CSP-LAC.  Id. ¶ 17.  In support of this contention,

11  Plaintiff attaches "sign-in/out" sheets by prison officials on duty at the A-Facility

12  ("Exhibit I"), which purportedly reflect Williams was not working at the second watch at

13  the A-Facility on August 27, 2011.  See id., Ex. I.

14          **iii.    Affidavit of Kelvin Singleton**

15      Plaintiff attaches an affidavit signed by CSP-LAC inmate Kelvin X. Singleton, in

16  his declaration responding to Defendant's declaration ("Exhibit F").  Pl.'s Decl. regarding

17  Def.'s Decl., Ex. F.  The affidavit appears to have been presented by Singleton in another

18  action against Defendant and Officer Wayne.  In the affidavit, Singleton avers he was

19  placed in administrative segregation by Defendant on October 23, 2011 because of an

20  anonymous note warning Singleton was planning to stab Correctional Officer M. Lopez.

21  Id., Ex. F ¶ 1.  Singleton claims that once he was confined, Defendant told him to "watch

22  [his] back."  Id.  Singleton also states Defendant was "present" during a 2005 incident

23  where Officer Wayne retaliated against him.  Id., Ex. F ¶ 3.  Singleton generally alleges

24  _____

25    [15]  Plaintiff also contests his classification as an "inactive" Black Guerilla Family
    gang member by CSP-LAC prison officials.  Pl.'s Decl. regarding Def.'s Decl. ¶ 13-14.
26  In support of his arguments in regard to his gang classification, Plaintiff attaches a
    declaration by prison inmate S. Alexander.  See Pl.'s Decl. regarding Def.'s Decl., Ex. H.
27  The declaration is not relevant to any of Plaintiff's claims in the FAC.

28

Defendant, Officer Wayne, and Correctional Officer Delatorre have "a well-documented history of dropping 'anonymous notes' on prisoners as a means of harassment and terrorizing prisoners." Id.

###            c.      **First Amendment Retaliation Claims**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of h[is] First Amendment rights and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Mere speculation that defendants acted out of retaliation is simply not sufficient to sustain a retaliation claim. Wood v. Yordy, 753 F.3d 899 (9th Cir. 2014).

"Adverse action" is action that "would chill a person of ordinary firmness" from engaging in protected activity. Pinard v. Clatskanie School District, 467 F.3d 755, 770 (9th Cir. 2006). Both litigation in court and filing inmate grievances are "protected activities" and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. See Rhodes, 408 F.3d at 567; Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004). Moreover, placement in administrative segregation for engaging in such protected activities constitutes an "adverse action" under Rhodes. See Austin, 367 F.3d at 1171.

Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). In the prison context, courts should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Id. at 807. More generally, retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which often squander[s] judicial resources with little offsetting benefit to anyone." Id. (internal citation and quotation

1    marks omitted).

2        d.    **Analysis**

3        The Court holds Defendant is entitled to judgment as a matter of law as to Claim

4    One, based on the undisputed facts viewed in the light most favorable to Plaintiff.  The

5    Court finds Plaintiff has not created a genuine issue of material fact as to whether his

6    confinement in administrative segregation on August 27, 2011 "did not reasonably

7    advance a legitimate correctional goal."  Rhodes, 408 F.3d at 567-68.

8        It is undisputed by the parties that Plaintiff shared a cell with CSP-LAC inmate

9    Jenson at the time of his August 2011 segregation.  Def.'s Reply SUF ¶ 5.  Plaintiff does

10   not dispute that the anonymous note found by prison officials on August 27, 2011 warned

11   that Jenson was planning to harm CSP-LAC Sergeant Williams.  Id. ¶ 4.  Defendant's

12   declaration establishes the note provided a legitimate basis for segregating Plaintiff

13   because it was unclear whether and to what extent Plaintiff—as Jenson's cellmate—was

14   involved in Jenson's alleged plot.  Plaintiff's segregation thus advanced at least two

15   penological goals: it promoted institutional security and ensured the integrity of the

16   investigation into Plaintiff's alleged misconduct.  See Def.'s Decl. ¶ 4.  In short, the

17   evidence shows Plaintiff's August 2011 segregation *did* "reasonably advance" legitimate

18   correctional goals.  Rhodes, 408 F.3d at 567-68; see also Barnett v. Centoni, 31 F.3d 813,

19   816 (9th Cir. 1994) (recognizing institutional security as a legitimate penological goal);

20   Bryant v. Cortez, 536 F. Supp. 2d 1160, 1169 (C.D. Cal. 2008) ("Maintaining the

21   integrity of an investigation into serious institutional misconduct is a legitimate

22   penological interest.").

23       Plaintiff appears to present two arguments suggesting his segregation did not

24   advance any legitimate correctional goal.  First, Plaintiff alleges the August 27, 2011 note

25   was somehow fabricated by Correctional Officer Wayne and was meant to "set up"

26   Plaintiff.  See Pl.'s Decl. regarding Def.'s Decl. ¶¶ 11-15.  Plaintiff claims the

27   anonymous kite was a "cover" for his administrative segregation on August 27, 2011 and

28   that his segregation was actually motivated by his participation in protected activities.  Id.

1    Admittedly, the Ninth Circuit has held that "prison officials may not defeat a retaliation

2    claim on summary judgment simply by articulating a general justification for a neutral

3    process, when there is a genuine issue of material fact as to whether the action was taken

4    in retaliation for the exercise of a constitutional right." Bruce v. Ylst, 351 F.3d 1283,

5    1289 (9th Cir. 2003).  The Court in Bruce reasoned that a "valid penological purpose" is

6    not reasonably advanced where that purpose is used "as a cover or a ruse to silence and

7    punish" an inmate for his protected conduct.  Id. (finding genuine issue of material fact as

8    to retaliation where prisoner alleged being told by prison official that his gang validation

9    was retaliatory).

10       Here, however, Defendant's claimed rationale for Plaintiff's segregation is not

11   merely a "general justification for a neutral process."  See id. (finding prison officials'

12   reliance on standard gang validation procedure for validating a prisoner was a "general

13   justification for a neutral process").  Rather, Defendant's proffered rationale is context-

14   specific and arises from the discovery of the anonymous kite and the need to protect

15   Williams.  See Lopez v. Martel, No. CIV S-08-826-FCD-KJM-P, 2009 WL 2824864, at

16   *4 (E.D. Cal. Sept. 1, 2009) ("Defendant has countered not with a 'general justification'

17   argument, but rather with specific information that he placed plaintiff in segregation to

18   protect [a correctional counselor]'s safety after considering confidential information he

19   deemed reliable.").

20       In addition, Plaintiff offers no evidence showing Defendant's proffered rationale

21   for his segregation is being used "as a cover or a ruse to silence and punish" him for

22   engaging in protected activity.  See Bruce, 351 F.3d at 1289.  Plaintiff merely presents

23   conclusory allegations and Singleton's statements that Defendant and Wayne had

24   fabricated notes in unrelated incidents in the past.  Furthermore, Plaintiff never expressly

25   claims Defendant was involved in fabricating the kite.  Such evidence is insufficient to

26   create a genuine dispute of material fact as to whether Defendant's actions reasonably

27   advanced a legitimate correctional goal.  See Soremekun v. Thrifty Payless, Inc., 509

28   F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and

24

1  moving papers is insufficient to raise genuine issues of fact and defeat summary

2  judgment."); see also Rizzo v. Dawson, 778 F.2d 527, 532 n.4 (9th Cir. 1985) (suggesting

3  in prisoner retaliation context that "bare allegations of arbitrary retaliation" are not

4  enough to avoid dismissal and dismissal may be "warranted if there was no factual

5  support for the allegations [of retaliation]").

6         Plaintiff also presents "sign in" sheets purportedly showing Sergeant Williams was

7  not working during the second watch at the A-Facility on August 27, 2011.  See Pl.'s

8  Decl. regarding Def.'s Decl., Ex. I.  Plaintiff appears to argue that since Williams was not

9  working in the A-Facility during the second watch on the day of his segregation, the

10  segregation could not have been based on any need to protect Williams from Jenson or

11  Plaintiff.  Id. ¶ 17.  This argument is meritless.  Plaintiff's evidence merely shows

12  Williams was not working a specific shift at CSP-LAC on a particular day.  The evidence

13  does not establish Williams was absent from CSP-LAC altogether, would not have

14  returned to the A-Facility during subsequent shifts, or would not have been at risk of

15  harm from Jenson's alleged plot at some future point in time.  Hence, even assuming

16  Williams was not present in the A-Facility during the second watch on the specific date

17  of Plaintiff and Jenson's segregation, Plaintiff's segregation still advanced at least two

18  correctional goals: (1) the placement prevented either Plaintiff or Jenson from assaulting

19  Williams until the anonymous note's allegations could be investigated, see Barnett, 31

20  F.3d at 816; and (2) the placement was necessary to ensure the integrity of an

21  investigation into whether he was actually part of a plan to assault Williams, see Bryant,

22  536 F. Supp. at 1169.

23         In short, Plaintiff has not created a genuine issue of material fact that his

24  confinement in administrative segregation on August 27, 2011 did not reasonably

25  advance a legitimate correctional goal.  See Rhodes, 408 F.3d at 567-68.  Accordingly,

26  Defendant is entitled to judgment as a matter of law as to Claim One and Claim One must

27  be dismissed with prejudice.

28

**2.**     <u>Defendant is Entitled to Judgment as a Matter of Law in Regard to</u> <u>Claim Two</u>

In Claim Two, Plaintiff asserts his confinement in administrative segregation on August 27, 2011 violated his Eighth Amendment right to be free from cruel and unusual punishment. FAC at 10. However, it is well-established that being housed in administrative segregation, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment. "[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." <u>Hewitt v. Helms</u>, 459 U.S. 460, 468, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983). Even an indeterminate sentence in administrative segregation, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment. <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (holding no contact with any other inmate in administrative segregation, either for exercise, day room access, or otherwise not cruel and unusual punishment). Accordingly, Defendant is entitled to judgment as a matter of law in regard to Claim Two and Claim Two must be dismissed with prejudice.

**C.**     <u>Defendant is Entitled to Judgment as a Matter of Law in Regard to Claims</u> <u>Three and Four</u>.

**1.**     <u>Defendant is Entitled to Judgment as a Matter of Law in Regard to</u> <u>Claim Three</u>

In Claim Three, Plaintiff alleges Defendant placed Plaintiff in administrative segregation on January 26, 2012 in retaliation for pursuing a staff complaint against CSP-LAC Correctional Officer Hoffman, in violation of Plaintiff's First Amendment rights. FAC at 11. Defendant argues Claim Three is meritless because Plaintiff's administrative segregation on January 26, 2012 was for Plaintiff's own safety and advanced a legitimate correctional goal. Def.'s Mem. at 15-16.

26

1            **a.**     **Defendant's Evidence in Support of Motion for Summary**

2                   **Adjudication of Claim Three**

3        In support of his Motion for Summary Judgment as to Claim Three, Defendant

4 submits the following evidence.

5                **i.**     **Defendant's Declaration**

6        Defendant presents his own declaration, signed under penalty of perjury.  In the

7 declaration, Defendant avers that on January 26, 2012, he conducted an interview with

8 Plaintiff at CSP-LAC.  Def.'s Decl. ¶ 6.  Defendant claims Plaintiff told him that on

9 January 25, 2012, a correctional officer put him in a bear hug and subsequently struck

10 him in his groin area twice during a clothed body search.  Id.  Defendant claims Plaintiff

11 reported that he knew the correctional officer in question to be Officer D. S. Lewis, but

12 that the officer identified himself as "Hoffman."  Id.

13        Defendant claims he then ordered Plaintiff to be administratively segregated,

14 pursuant to CDCR policy.  Id. ¶ 7.  Under the policy, when an inmate makes allegations

15 of staff misconduct, the inmate must be removed from the general population for his own

16 protection.  Id. (citing Cal. Code Regs. tit. 15, §§ 3335(a), 3341.5(c)(1)).  Defendant

17 states the objective of the policy is to "protect the inmate from having any contact with

18 the alleged abusive staff member and in order to maintain the integrity of the

19 investigation."  Id.  Defendant has attached a copy of the "CDC 114-D Administrative

20 Segregation Unit Placement Notice" he signed on January 26, 2012 when confining

21 Plaintiff to administrative segregation ("Exhibit E").  See id., Ex. E.  The Notice states

22 Plaintiff was being placed in administrative segregation "pending investigation into [his]

23 allegations of staff misconduct," in order "to ensure the safety of [him]self and staff as

24 well as preserve the integrity of the investigation."  Id.

25        Defendant states Plaintiff was released from administrative segregation the

26 following day on January 27, 2012.  Id. ¶ 9.

27 ///

28

1

### ii.    Plaintiff's Deposition Testimony

2 Defendant also presents transcripts of Plaintiff's testimony at his January 12, 2015

3 deposition.[16]  See Jeffrey Decl., Ex. A.  Plaintiff testified as follows.

4 On January 25, 2012, CSP-LAC Correctional Officer Hoffman subjected him to a

5 pat-down search.  Id., Ex. A at 106.  During the search, Hoffman began hitting Plaintiff in

6 his groin area.  Id.  Plaintiff conceded he had no information or evidence that Defendant

7 had anything to do with Hoffman's assault on Plaintiff, other than his observation that

8 Defendant had an "anti-inmate bent."  Id., Ex. A at 111.

9 On January 26, 2012, Plaintiff reported Hoffman's assault to Defendant.  Id., Ex. A

10 at 113.  Defendant appears to have conducted a video interview of Plaintiff.  Id.  Plaintiff

11 testified he mistakenly named his assailant as "D. Lewis" instead of Hoffman during his

12 video interview with Defendant.  Id., Ex. A at 115.  Plaintiff testified that during the

13 interview, Defendant asked if Plaintiff was going to file a staff complaint against his

14 assailant.  Id.  Plaintiff testified that when he replied that he would pursue a staff

15 complaint, Defendant reportedly stated "Well, I'm going to have to lock you up."  Id.

16 However, Plaintiff testified Defendant told him he would need to place Plaintiff in

17 administrative segregation for his own protection.  Id., Ex. A at 120-21.

18 Plaintiff claimed he was subsequently placed in administrative segregation for one

19 day and was released on January 27, 2012.  Id., Ex. A at 121.

20 ### b.    Plaintiff's Evidence in Opposing Summary Adjudication of Claim

21 ### Three

22 In his Opposition to Defendant's Motion, Plaintiff presents a declaration in

23 response to Defendant's declaration.  See Pl.'s Decl. regarding Def.'s Decl.  In the

24 declaration, Plaintiff claims that on January 26, 2012, Correctional Officer Hoffman was

25 not working at the A-Facility at CSP-LAC.  Id. ¶ 18.  In support of this contention,

26 [16]  As stated previously in footnote 13, Plaintiff does not contest the transcripts'

27 accuracy.

28

1  Plaintiff attaches "sign-in/out" sheets by prison officials on duty at the A-Facility

2  ("Exhibit J"), which purportedly reflect Hoffman was not working at the A-Facility at the

3  time of Plaintiff's January 26, 2012 administrative segregation.  See Id., Ex. J.  Plaintiff

4  argues Hoffman's absence from the A-Facility at the time shows Plaintiff's January 2012

5  administrative segregation had nothing to do with protecting Plaintiff from Hoffman.  Id.

6  ¶ 18.

7                    **c.     First Amendment Retaliation Claims**

8          See Section V.B.1.a. for a description of the legal standard for assessing First

9  Amendment retaliation claims asserted by prisoners.

10                   **d.     Analysis**

11         Viewing the undisputed facts in the light most favorable to Plaintiff, the Court

12  concludes Defendant is entitled to judgment as a matter of law as to Claim Three.  The

13  Court finds Plaintiff has not created a genuine issue of material fact regarding whether his

14  confinement in administrative segregation from January 26 to January 27, 2012 "did not

15  reasonably advance a legitimate correctional goal."  Rhodes, 408 F.3d at 567-68.  As

16  Defendant states in his declaration, California regulations require prison officials to

17  segregate prisoners who make complaints against staff for (1) the protection of the

18  complainants and (2) to maintain the integrity of the investigation into staff misconduct.

19  See Cal. Code Regs. tit. 15, §§ 3335.[17]  Here, the evidence shows Plaintiff's

20  _____

21      [17]   In his Objections to the Court's original Report and Recommendation, Plaintiff
    claims applicable prison regulations did not require his administrative segregation outside
22  of his cell because they provide that "[a]dministrative segregation may be accomplished
    by confinement in a designated Administrative Segregation Unit (ASU) or, in an
23  emergency, *to any single cell unit capable of providing secure segregation*."  Objections
    at 6 (quoting Cal. Code Regs. tit. 15, § 3335) (emphasis added).  Because he was already
24  confined to a single cell unit on January 25 and 26, 2012, Plaintiff claims his segregation
    outside of his cell on January 26 was therefore unnecessary under prison regulations.  Id.
25  However, this argument is meritless because prison regulations only allow for
    administrative segregation in a single cell unit "in an emergency."  See Cal. Code Regs.
26  tit. 15, § 3335.

27

28

administrative segregation was in accord with this policy and furthered these correctional goals because Plaintiff was segregated after he told Defendant in an interview that he had been physically assaulted by Officer Hoffman.  As Plaintiff conceded in his deposition testimony, Defendant told him he was being placed in administrative segregation in order to protect him—a legitimate penological purpose, particularly in light of Plaintiff's allegation that he had already been assaulted by a correctional officer.  See Jeffrey Decl., Ex. A at 120-21.

Plaintiff presents no evidence showing Defendant's proffered rationales for his segregation are merely "general justification[s] for a neutral process" or are being used "as a cover or a ruse to silence and punish" him for engaging in protected activity.  See Bruce, 351 F.3d at 1289.  Indeed, Plaintiff himself testified during his January 2015 deposition that Defendant told him on January 26, 2012 that his segregation was for his own protection.  Jeffrey Decl., Ex. A at 120-21.  Moreover, Defendant's proffered rationales are not "general justification[s]," but context-specific and based on concerns Plaintiff was in danger from Hoffman on January 26, 2012.

Plaintiff appears to claim his segregation on January 26, 2012 was not necessary to protect him from Hoffman because Hoffman was not working the second watch at the A-Facility at CSP-LAC on January 26, 2012.  In support, Plaintiff submits several "sign-in/out" sheets purporting to establish this proposition.  See Pl.'s Decl. regarding Def.'s Decl., Ex. J.  However, Plaintiff's evidence merely establishes Hoffman was not present at the A-Facility during a particular shift on a particular day: it does not establish Hoffman had departed from CSP-LAC altogether, that Hoffman would be absent from the A-Facility during subsequent shifts, or that Hoffman would not see Plaintiff outside of the A-Facility.  Ultimately, Plaintiff's evidence does not establish Plaintiff was not at risk of harm from Hoffman or other staff; or that his segregation was simply a cover or a ruse to silence and punish him.  Hence, Plaintiff fails to show his segregation did not advance a legitimate penological interest in institutional security.  See Barnett v. Centoni,

1   31 F.3d 813, 816 (9th Cir. 1994) (recognizing institutional security as a legitimate

2   penological goal).  Moreover, Plaintiff has not shown his segregation was not necessary

3   to ensure the integrity of an investigation into his complaint against Hoffman.  Courts

4   have recognized that "[m]aintaining the integrity of an investigation into serious

5   institutional misconduct is a legitimate penological interest." Bryant v. Cortez, 536 F.

6   Supp. 2d 1160, 1169 (C.D. Cal. 2008); see also Draper v. Harris, 245 F. App'x. 699, 701

7   (9th Cir. 2007) ("Draper failed to raise a triable issue as to whether his placement in

8   administrative segregation pending the investigation of his complaints did not advance a

9   legitimate penological goal.").

10         In his Objections to the Court's original Report and Recommendation, Plaintiff

11  advances additional arguments in opposition to the instant Motion as to Claim Three.  See

12  Objections at 6-7.  First, Plaintiff argues his confinement in administrative segregation on

13  January 26, 2012 was "unnecessary or perhaps overreaching" to secure Plaintiff's safety

14  because: (1) CSP-LAC was already at its highest security classification on January 26,

15  2012 and Plaintiff was adequately protected from Hoffman at this time; (2) instead of

16  administratively segregating Plaintiff, Defendant could have simply barred Hoffman from

17  entering CSP-LAC facilities housing Plaintiff; and (3) Defendant had some latitude as to

18  how best to secure Plaintiff's safety. Id.  As an initial matter, the Court must defer to

19  Defendant's judgment that administrative segregation was the most effective means of

20  ensuring Plaintiff's safety on January 26, 2012.  See Sandin v. Conner, 515 U.S. 472,

21  482, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) (noting "federal courts ought to afford

22  appropriate deference and flexibility to state [prison] officials trying to manage a volatile

23  environment").  Moreover, even assuming Plaintiff's claims that other alternatives to

24  protect Plaintiff's safety and the integrity of the investigation might have been available,

25  this does not create a genuine issue of material fact that Plaintiff's segregation did not

26  advance a legitimate penological goal.

27

28

31

1    Second, Plaintiff cites his deposition testimony that when he was released from
2    administrative segregation on January 27, 2012 by CSP-LAC Captain Beauchter
3    ("Beauchter"), Beauchter stated "you can't lock up anybody for making a staff
4    complaint."  Objections at 7-8; Ex. A.  According to Plaintiff, Beauchter's statement
5    reflects Defendant's state of mind.  Objections at 7-8.  As an initial matter, Beauchter's
6    statement constitutes inadmissible hearsay, and contrary to Plaintiff's claim, is not
7    admissible to show Defendant's state of mind.  <u>Family Home & Fin. Ctr., Inc. v. Fed.</u>
8    <u>Home Loan Mortgage Corp.</u>, 461 F. Supp. 2d 1188, 1194 (C.D. Cal. 2006) <u>aff'd sub</u>
9    <u>nom. Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.</u>, 525 F.3d 822
10   (9th Cir. 2008)  ("'the state of mind exception does not authorize receipt of a statement
11   by one person as proof of another's state of mind'") (quoting <u>Hong v. Children's Mem'l</u>
12   <u>Hosp.</u>, 993 F.2d 1257, 1265 (7th Cir. 1993)).  In addition, at most, Beauchter's remark
13   merely reflects Beauchter's opinion regarding the applicable prison regulations – an
14   opinion which is not relevant in determining whether Plaintiff's segregation advanced a
15   legitimate penological goal.  Moreover, regardless of Beauchter's opinion, applicable
16   prison regulations clearly allow for segregation because of safety concerns or concerns
17   about the integrity of an investigation of misconduct - circumstances which the parties do
18   not dispute existed in this case.  <u>See</u> Cal. Code Regs. tit. 15, § 3335.

19   In short, Plaintiff has not created a genuine issue of material fact that his
20   segregation on January 26, 2012 did not "reasonably advance" legitimate correctional
21   goals.  <u>Rhodes</u>, 408 F.3d at 567-68.  Accordingly, Defendant is entitled to judgment as a
22   matter of law as to Claim Three and Claim Three must be dismissed with prejudice.

23        **2.**      **Defendant is Entitled to Judgment as a Matter of Law in Regard to**
24                   **Claim Four**

25   In Claim Four, Plaintiff asserts his confinement in administrative segregation on
26   January 26, 2012 violated his Eighth Amendment right to be free from cruel and unusual
27   punishment.  FAC at 11.  However, as discussed further in Section V.B.2, it is well-
28

1    established that being housed in administrative segregation, without more, does not

2    constitute cruel and unusual punishment for purposes of the Eighth Amendment.  <u>See</u>

3    <u>Hewitt v. Helms</u>, 459 U.S. 460, 468, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983); <u>Anderson</u>

4    <u>v. County of Kern</u>, 45 F.3d 1310, 1315-16 (9th Cir. 1995).  Accordingly, Defendant is

5    entitled to judgment as a matter of law in regard to Claim Four and Claim Four must be

6    dismissed with prejudice.

7    **D.**    **The Court Declines to Exercise Subject-Matter Jurisdiction over Plaintiff's**

8         **State Law Claims.**

9         Although unclear, Plaintiff's FAC also appears to assert state law claims for "false

10   imprisonment," arising out of his repeated placements in administrative segregation in

11   August 2011, January 2012, and March 2012.  FAC at 10-12.

12        The Court has original jurisdiction solely over Plaintiff's six federal law claims

13   brought under 42 U.S.C. § 1983, which are dismissed for the reasons set forth above.

14   The Court only has supplemental jurisdiction over Plaintiff's state law claims.  <u>See</u>

15   <u>Gypsum Resources, LLC v. Masto</u>, 671 F.3d 834, 836 (9th Cir. 2011).  "Where a district

16   court dismisses every claim over which it had original jurisdiction, it retains pure

17   discretion in deciding whether to exercise supplemental jurisdiction over the remaining

18   claims."  <u>Lacey v. Maricopa County</u>, 649 F.3d 1118, 1137 (9th Cir. 2011) (internal

19   citation, alterations, and quotation marks omitted); <u>see also</u> 28 U.S.C. § 1367(c).  Thus,

20   because Plaintiff's federal law claims should be dismissed, the Court declines to exercise

21   supplemental jurisdiction over Plaintiff's state law claims.  Accordingly, Plaintiff's state

22   law claims are dismissed without prejudice for lack of jurisdiction.  <u>See</u> <u>Gini v. Las</u>

23   <u>Vegas Metro. Police Dep't</u>, 40 F.3d 1041, 1046 (9th Cir. 1994) (dismissal based on

24   declining supplemental jurisdiction should be without prejudice).

25   *///*

26   *///*

27   *///*

28

1

2                                    **VI.**

3                             **<u>CONCLUSION</u>**

4          IT IS THEREFORE RECOMMENDED that the Court issue an Order: (1)

5   accepting this Final Report and Recommendation; (2) **GRANTING** Defendant Charlie

6   Hughes' Motion for Summary Judgment; and (3) **DISMISSING** this action, with

7   prejudice as to Claims One, Two, Three, and Four of the FAC and without prejudice as to

8   Claims Five and Six of the FAC and Plaintiff's state law claims.

9

10

11  DATED: September 10, 2015

12                               _____
                                 HON. KENLY KIYA KATO
                                 United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         34